The STATE of Ohio, Appellee,

v.

SPRINGER, Appellant.

[Cite as State v. Springer (1999), 135 Ohio App.3d 767.]

Court of Appeals of Ohio,
Seventh District, Jefferson County.

No. 97–JE–30.

Decided Nov. 10, 1999.

*Stephen M. Stern*, Jefferson County Prosecuting Attorney, and *Costa D. Mastros*, Assistant Prosecuting Attorney, for appellee.

*Thomas D. Dawson*, for appellant.

GENE DONOFRIO, Judge.

Defendant-appellant, Tina Springer, appeals her conviction in Jefferson County Court, District Number One, on one count of falsification, in violation of R.C. 2921.13(A)(3).

On September 19, 1996, appellant made a report to the Saline Township Police Department that she had been raped somewhere on Highway 213 in Saline Township. Both the Saline Township Police Department and the Jefferson County Sheriff's Office investigated the alleged incident but no arrests were made. On October 3, 1996, appellant wrote a letter to the Saline Township Trustees and the Ohio Attorney General's Office complaining about the manner in which the Saline Township Police Department was handling the investigation.

In order to determine whether or not a rape had actually occurred, appellant was asked to submit to a polygraph test. However, the night before the scheduled date of the test appellant changed her mind and decided not to take the test. Sheriff Fred Abdalla testified that when he learned of this he called appellant to try to persuade her to take the test. Appellant and her husband Tim Springer both testified that Abdalla informed them that appellant had no choice about taking the test and that a police car would be sent to pick her up in the morning. Abdalla denied having told appellant that she had to take the test, but claimed that he simply tried to persuade her to change her mind.

On October 7, 1996, Officer Vonda Stewart of the Saline Township Police Department and Detective Sergeant Susan Bell of the Jefferson County Sheriff's Office drove appellant to the Bureau of Criminal Investigation in Cambridge, Ohio for the polygraph test. After the polygraph test Bell and Stewart drove appellant back to the sheriff's office where appellant spoke with Abdalla about the results of the test. Abdalla informed appellant that she had failed the test and asked if she would tell him the truth about what had happened.

Appellant then recanted her allegations of rape and wrote out a statement to the same effect. According to Abdalla, appellant was not given *Miranda* warnings as she was considered a victim at the time rather than a suspect, and

because Abdalla had no intentions of arresting her. After signing the statement appellant was driven home by Officer Stewart. During the drive to her house, appellant told Stewart that she was sorry for having caused the police department so much trouble.

Appellant was subsequently charged with falsification and moved to suppress her written statement and the oral statement given to Officer Stewart. The trial court denied the motion ruling:

"The defendant was not 'in custody' when she gave her statement to the Sheriff. The facts reveal that she was in the Sheriff's office for a period of only ten (10) to twenty (20) minutes, that she was not a suspect regarding any offense prior to her statement but instead had the status of victim, she was not arrested or booked after her statement and she was free to leave after she made her statement. Such circumstances do not demonstrate an 'in custody' situation or a significant deprivation of freedom as contemplated by *Miranda.*"

Following the trial court's overruling of appellant's motion to suppress, appellant entered a plea of no contest to the charge. The trial court made a finding of guilty and sentenced appellant to six months' probation and a $250 fine. Appellant filed a timely notice of appeal on May 6, 1997.

Appellant's sole assignment of error states:

"The trial court erred in overruling defendant–appellant's motion to dismiss where Sheriff Fred Abdalla took a statement from the defendant–appellant without advising the defendant–appellant of her *Miranda* rights, and that statement was later used to prosecute defendant–appellant for Falsification."

Appellant argues that her written statement should have been suppressed because Abdalla did not give appellant *Miranda* warnings before eliciting the statement. Appellant compares her case with that of *State v. Buchholz* (1984), 11 Ohio St.3d 24, 11 OBR 56, 462 N.E.2d 1222, in which the Supreme Court of Ohio held that a false statement made by a witness to a crime should have been suppressed in the absence of *Miranda* warnings. Appellant points out that at the time of the questioning, Sheriff Abdalla knew that appellant had failed the polygraph test and should have known that his questioning was likely to elicit an incriminating response. In addition, appellant argues that a reasonable person in her position would have believed that they had no choice but to talk with the sheriff.

Appellant also argues that the trial court should have suppressed the statement she made to Officer Stewart under the fruit of the poisonous tree doctrine. According to appellant, a subsequent confession is inadmissible where there is no break in the stream of events from the time of the earlier invalid confession.

Because appellant's statement to Abdalla was invalid, appellant argues that her subsequent statement to Stewart was similarly invalid.

In response, plaintiff-appellee, the state of Ohio, argues that the trial court properly denied appellant's motion to suppress. Appellee argues that appellant was not in custody, simply because she did not have her own transportation and was dependent upon law enforcement officials for transportation home. In addition, appellee claims that *Buchholz, supra,* is factually dissimilar to the instant case because throughout the investigation, up to and including the interview with Abdalla, appellant was considered a victim rather than a suspect. Appellee argues that the trial court did not err in overruling appellant's motion to suppress, as any reasonable person in appellant's position would not have felt significantly deprived of their freedom.

When reviewing a ruling on a motion to suppress, a court must remain mindful that the weight of the evidence and credibility of witnesses are primarily for the trier of fact. *State v. Smith* (1997), 80 Ohio St.3d 89, 105–106, 684 N.E.2d 668, 685–686. An appellate court is to determine whether the trial court's findings are supported by competent, credible evidence. *State v. Winand* (1996), 116 Ohio App.3d 286, 288, 688 N.E.2d 9, 11. Accepting the findings of fact of the trial court as true, an appellate court must then independently determine as a matter of law, without deference to the trial court's conclusion, whether the trial court erred in applying the substantive law to the facts of the case. *State v. Harris* (1994), 98 Ohio App.3d 543, 546, 649 N.E.2d 7, 9.

Police are not required to administer *Miranda* warnings to everyone whom they question. *State v. Biros* (1997), 78 Ohio St.3d 426, 440, 678 N.E.2d 891, 904–905. The duty to advise a suspect of *Miranda* rights does not attach until questioning rises to the level of a "custodial interrogation." *State v. Gumm* (1995), 73 Ohio St.3d 413, 429, 653 N.E.2d 253, 268. The determination as to whether a custodial interrogation has occurred requires an inquiry into how a reasonable man in the suspect's position would have understood his situation. *State v. Mason* (1998), 82 Ohio St.3d 144, 154, 694 N.E.2d 932, 946–947. The ultimate inquiry is simply whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest. *Id.*

The determination of whether one is in custody or otherwise significantly deprived of his freedom for the purposes of *Miranda* protection is dependent upon the circumstances of each individual case. *State v. Torres* (1990), 67 Ohio App.3d 268, 271, 586 N.E.2d 1153, 1155. In making this determination the courts have considered certain factors to be relevant, including the length of the detention, the perception and expectation of the detainee as to his freedom to leave at the conclusion of the interrogation, the atmosphere of the questioning,

and whether the interview is in a public or private place. *Id.* The subjective intent of the officer and the subjective belief of the suspect are irrelevant in this analysis. *State v. Robinson* (1994), 98 Ohio App.3d 560, 571, 649 N.E.2d 18, 25. In addition, the fact that a suspect is being interviewed at a police station does not, *per se,* require a *Miranda* rights warning. *Mason, supra.*

To determine whether a suspect has been interrogated, the heart of the inquiry focuses on police coercion, and whether the suspect has been compelled to speak by that coercion. *State v. Tucker* (1998), 81 Ohio St.3d 431, 436, 692 N.E.2d 171, 175–176. This compulsion can be brought about by express questioning, but also can be brought about by the "functional equivalent" of express questioning. *Id.* "Any statement, question or remark which is 'reasonably likely to elicit an incriminating response' is an interrogation." *State v. Knuckles* (1992), 65 Ohio St.3d 494, 495, 605 N.E.2d 54, 55 (quoting *Rhode Island v. Innis* [1980], 446 U.S. 291, 301, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297, 308).

Appellant's reliance on *Buchholz, supra,* is misplaced. In *Buchholz* the Supreme Court of Ohio overruled its prior decision in *State v. Pyle* (1969), 19 Ohio St.2d 64, 48 O.O.2d 82, 249 N.E.2d 826. *Pyle* had held that *Miranda* warnings were not required in cases where an individual was accused of committing a misdemeanor. In overruling *Pyle* and establishing what is the current state of the law in Ohio, the *Buchholz* court stated that *Miranda* warnings were required prior to custodial interrogation, "regardless of whether the individual is suspected of committing a felony or misdemeanor." *Buchholz, supra,* syllabus. In reaching its decision the court had no need to decide whether or not the defendant had been subject to custodial interrogation. Rather, the court noted:

"The state in the case at bar has not raised on appeal the question of whether appellee was subject to custodial interrogation at the time he gave the second statement. In light of the state's argument that *Miranda* is inapplicable solely because appellee was convicted of a misdemeanor, we assume that the state concedes that appellee was in custody and subjected to interrogation." *Id.,* 11 Ohio St.3d at 26, 11 OBR at 59, 462 N.E.2d at 1225, fn. 2.

Notably, the fact that the defendant in *Buchholz* was initially interviewed as a witness rather than a suspect in the crime did not form the basis for the court's decision. As such, *Buchholz* is of limited use in determining the issues raised in this appeal.

In the instant case, the trial court found that appellant was not in custody when she gave her statement to Abdalla and that no interrogation had occurred. The record supports the trial court's findings that appellant's conversation with Abdalla lasted between ten and twenty minutes and that after making her statement appellant was not arrested, charged, or booked. Appellant's status at the time of the interview remained that of victim rather than suspect.

In addition, we agree with the trial court that simply asking appellant, the victim of an alleged crime, to explain what had happened on the night in question did not amount to an interrogation. Although Abdalla knew that appellant had failed the polygraph test, this in itself did not make his question one that was reasonably likely to elicit an incriminating response on the part of appellant. Appellant testified that she could have called her husband's boss or her babysitter to come pick her up that day had she decided to walk out of the sheriff's office. Appellant was not told that she could not leave the sheriff's office until she gave a statement. Rather, once appellant gave her statement she was taken home. Certainly, at that time she was not arrested or charged with any offense. Nowhere in the record is there evidence that appellant's freedom of movement was restrained to the degree associated with a formal arrest.

At the suppression hearing, appellant claimed that the interview with Abdalla had lasted considerably longer than fifteen minutes and that she had asked for her husband and her attorney to be present. That request had been denied. However, Detective Bell testified that the interview lasted "ten or fifteen minutes" and Abdalla testified that appellant did not request the presence of her husband or an attorney. The weight of the evidence and credibility of witnesses are primarily for the trier of fact. *Smith, supra.* The trial court apparently believed the testimony of Abdalla, Bell, and Stewart over that of appellant, and the record contains competent, credible evidence to support the trial court's findings. The trial court did not err in overruling appellant's motion to suppress the written statement.

With respect to appellant's verbal statement given to Officer Stewart during her ride home, the trial court found that the statement had been spontaneous and unsolicited, and that appellant had not been in custody at the time. Officer Stewart did not say or ask appellant anything to elicit the apology to the police department. The record contains competent, credible evidence to support the trial court's finding that appellant's statement was unsolicited. As such, the trial court correctly overruled appellant's motion to suppress this statement. In addition, because appellant's written statement was not constitutionally invalid, her subsequent statement to Officer Stewart was not the fruit of a poisonous tree.

Accordingly, appellant's sole assignment of error is without merit.

The judgment of the trial court is hereby affirmed.

*Judgment affirmed.*

VUKOVICH and WAITE, JJ., concur.