OPINION AND JUDGMENT ENTRY
This is an appeal from a judgment of the Lucas County Court of Common Pleas which denied appellant's motion to suppress evidence. For the reasons that follow, this court affirms the judgment of the trial court.
Appellant sets forth the following assignments of error:
 "I. The trial court erred prejudicially in failing to rule that the third party who purported to consent to the entry of the police into the motel room had no real or apparent authority to do so.
 "II. The trial court erred prejudicially in failing to rule that the initial entry into the house was not by knowing and voluntary consent, but rather, only by submission to lawful authority.
 "III. The trial court erred prejudicially in failing to rule that the warrantless search of the room was not by virtue of knowing and voluntary consent, but rather only by submission to lawful authority."
The facts that are relevant to the issues raised on appeal are as follows. On March 12, 1997, appellant Alvedro Sosa was arrested at the Alexis Motel and charged with possession of heroin in violation of R.C. 2925.11(A) and (C)(6)(e). On April 15, 1997, appellant filed a motion to suppress evidence seized as a result of a warrantless search of the motel room. Appellant argued in his motion that the police entered and searched the motel room without his consent. On May 15, 1997, the trial court held a hearing on the motion and the following relevant testimony was presented.
Detective Regina Wiegand, Toledo Police Division, testified that on March 12, 1997, she received information from an anonymous source that three Hispanic males were trafficking in heroin from a room at the Alexis Motel. At approximately 8:00 a.m., Weigand, along with Sergeant Bill Wauford and Lieutenant Jack Smith went to the manager's office at the motel. The manager told the officers that three Hispanic males were staying in Room No. 21 and that the room was registered to Alvedro Sosa. Weigand and Wauford went to the door of Room No. 21 and Smith covered the rear of the motel. Weigand testified that Wauford knocked on the door and a Hispanic male, later identified as Santos Adames, answered. She stated that Wauford identified himself and showed his badge and asked if they could enter. Adames said yes and then let them into the room. Weigand further testified that Adames spoke English and appeared to understand what was asked of him. When they entered the room Weigand saw appellant and another man. She stated that, upon observing a coffee grinder and a scale, which they suspected to be tools of the drug trade, the officers told the men to lie on the floor while they were patted down for weapons. Weigand had her gun drawn at that time but re-holstered it when she patted the men down. Weigand stated that she asked under whose name the room was registered and appellant said it was in his name. She further testified that appellant gave her permission to search the room. Appellant was not handcuffed at that point. The men were permitted to sit up while the three officers searched the room. As a result of the search, the police confiscated heroin and syringes, in addition to the scale and other tools. Weigand testified that neither she nor Wauford told Adames when he answered the door that he did not have to let them in.
Sergeant Wauford testified as to his involvement in the investigation and search and his testimony essentially corroborated that of Detective Weigand. Wauford stated that he knocked on the door and when it was opened he showed his badge. He told Adames that they had information there was drug trafficking occurring out of the room and asked if they could come in. He stated that Adames then let them in. He further testified that it was obvious to him immediately upon entering the room that there was drug activity and, because of the likelihood of weapons being present in such a situation, they ordered the three men to lie on the floor for a pat-down. When they were satisfied that the men did not have any weapons, the officers had the men sit on the floor up against a wall. The men were not restrained at that time. Wauford testified that Weigand asked the men which of them had signed for the room and when appellant said that he had, Weigand asked him if they could search the room. Appellant said that they could and the search was conducted. Wauford stated that he did not have his gun drawn at any time.
On May 29, 1997, the trial court found appellant's motion to suppress not well-taken. As to the entry into the motel room, the trial court found that the officers had valid consent to enter. The trial court also found that the officers did not threaten, coerce or intimidate the men in the room, that appellant voluntarily consented to the search, and that at no point did any of the occupants of the room withdraw consent or object to the search. On June 2, 1997, appellant entered a no contest plea to the lesser offense of possession of heroin in violation of R.C.2925.11(C)(6)(c) and on June 11, 1997 he was sentenced to a term of four years in prison.
Appellant's three assignments of error all relate to the issue of consent to enter and consent to search the motel room and, as they can essentially be addressed by the same body of law, we will consider them together. Appellant asserts in his first assignment of error that the initial entry was non-consensual because Santos Adames, who answered the door and let the officers in, did not have authority to do so since the room was registered in appellant's name. Appellant asserts that the police knew that the room was registered in appellant's name and should have asked for his consent before entering. In his second assignment of error, appellant asserts that even if Adames had authority to allow entry into the room, he did not do so knowingly or voluntarily but "in submission to authority." In his third assignment of error, appellant asserts that, even if the initial entry was lawful, the ensuing search was unlawful. Appellant asserts that consent to search was not given voluntarily because Detective Weigand displayed her weapon and "touching occurred," which was "highly assertive" and coercive.
In examining a trial court's ruling on a motion to suppress, a reviewing court must keep in mind that weighing the evidence and determining the credibility of the witnesses are functions of the trier of fact. State v. DePew (1988), 38 Ohio St.3d 275. This court's function is to review the record to determine whether substantial evidence exists to support the ruling of the trial court. Maumee v. Johnson (1993), 90 Ohio App.3d 169.
Searches and seizures conducted without a warrant areper se unreasonable, subject to certain established exceptions.Schneckloth v. Bustamonte (1973), 412 U.S. 218, 219. One exception to the warrant requirement is a search conducted pursuant to consent. Id. A search based on consent, however, constitutes a waiver of an individual's Fourth Amendment rights and therefore requires more than a mere expression of approval; it must be demonstrated by the totality of all surrounding circumstances that consent to search was freely and voluntarily given. Schneckloth at 248-249. The state has the burden of proving by "clear and positive evidence" that appellant voluntarily consented to a warrantless search. Id. at 222. "Clear and positive evidence" has been held to be equivalent to clear and convincing evidence. State v. Danby (1983), 11 Ohio App.3d 38,41.
Consent to enter a protected area may be provided by a third party who possesses common authority over the premises in question. State v. Smith (1991), 73 Ohio App.3d 471, 475, citingUnited States v. Matlock (1974), 415 U.S. 164, 171. Such authority rests not on property rights, "* * * but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit * * * [entry]." United States v. Matlock at fn. 7.
As to the issue of consent to enter the motel room, there is substantial evidence to support the trial court's finding that consent to enter was voluntarily given and that Adames had authority to give that consent. According to the undisputed testimony of Detective Weigand and Sergeant Wauford, Wauford knocked on the door, waited for it to be opened, and then asked if they could enter. There were no weapons drawn at that time and there is no evidence whatsoever of any intimidating acts or statements at that time. There is nothing in the record to suggest that either of the officers engaged in coercive conduct or used a show of force when standing outside the door and asking Adames for permission to enter. It was clear to the officers that Adames spoke English and understood what they were asking. It was entirely reasonable for Weigand and Wauford to believe Adames had authority to consent to their entry. Considering the totality of the circumstances, we find that there is sufficient evidence to support the trial court's finding that Adames had "authority over the premises" and voluntarily gave the officers consent to enter the room. Accordingly, appellant's first and second assignments of error are not well-taken.
As to the issue of appellant's consent to search the room, we find that the record does not support appellant's claim that his consent was not given voluntarily. Again, the trial court was presented with undisputed testimony that Weigand's gun was displayed only briefly and reholstered as soon as she started the pat-down. Her gun was not drawn when she asked for permission to search. Wauford did not draw his weapon at any time. Further, there was no evidence that the officers at any time used inappropriate or unnecessarily forceful language. It is also significant that at the time of the entry, pat-down and request to search, the officers were outnumbered. Based on the foregoing, this court finds that the trial court did not err by finding that the officers were given a valid consent to search the motel room. Accordingly, appellant's third assignment of error is not well-taken.
On consideration whereof, this court finds that appellant was not prejudiced and the judgment of the Lucas County Court of Common Pleas denying appellant's motion to suppress is affirmed. Costs are assessed to appellant.
JUDGMENT AFFIRMED
 Peter M. Handwork, P.J., Richard W. Knepper, J., MarkL. Pietrykowski, J., concur.