OPINION
Plaintiff-appellant, the state of Ohio, appeals a decision of the Clermont County Municipal Court granting a motion to suppress all evidence obtained as a result of an investigatory stop of defendant-appellee, Jessica Wedding. Since we find that the stop was supported by reasonable articulable suspicion based upon the totality of the circumstances, we reverse.
On October 30, 1998, at approximately 2:20 a.m., Miami Township Police Officer Bobby Rose responded to a dispatch of a "verbal domestic"[1] occurring in the parking lot at 1100 Cook's Crossing Apartments. When he arrived at the apartment complex, Officer Rose drove across two vacant parking lots to reach the parking lot for the 1100 area, the farthest lot from the entrance. As he entered the third lot, Officer Rose passed a Ford Mustang driven by appellee. As he passed the Mustang, he noticed a female passenger in the front seat and a male passenger in the back seat. The female passenger was "obviously very distraught" and crying. Officer Rose testified that although he was fairly certain that the vehicle contained the parties involved in the dispute, he decided to investigate the remainder of the parking lot.
Officer Steve Burgess arrived at the scene as a backup.[2] Officer Rose radioed to Officer Burgess what he had observed. He also communicated to Officer Burgess that he believed the occupants of the Mustang were involved in the domestic dispute. Officer Burgess stopped the Mustang in the second parking lot by positioning his cruiser, with its lights activated, behind the Mustang after it pulled into a parking space.
Upon questioning the occupants of the Mustang, Officer Burgess learned that the female passenger had been involved in an argument with her boyfriend. They had "exchanged words," and she was upset over the incident. However, Officer Burgess detected an odor of alcohol emanating from appellee, the passengers, and the car. Officer Burgess administered field sobriety tests to appellee. Appellee performed the tests poorly and subsequently provided a breath sample that registered .165. Officer Burgess arrested appellee for operating a motor vehicle while under the influence of alcohol and with a breath-alcohol concentration above the specified limit in violation of R.C. 4511(A) (1) and (A) (3).
Appellee filed a motion to suppress all the evidence the officers gained as a result of the stop and appellee's arrest. Appellee alleged that Officer Burgess lacked a reasonable and articulable suspicion to stop her. The trial court granted appellee's motion, noting that "[a] crying passenger, in vehicle being operated legally with nothing more, even though it is observed in an area where the verbal altercation has been reported is not a sufficient basis to stop and detain the vehicle or its occupants."
From the trial court's ruling, appellant filed an appeal pursuant to R.C. 2945.67. The appeal was filed within seven days and certified pursuant to Crim.R. 12(J). Appellant raises a single assignment of error for our review:
 THE TRIAL COURT ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT IN GRANTING THE MOTION TO SUPPRESS UPON AN ALLEGEDLY IMPROPER STOP.
Appellant argues that the trial court erred in granting appellee's motion to suppress. An appellate court may not disturb a trial court's decision on a motion to suppress where it is supported by substantial credible evidence. Maumee v.Johnson (1993), 90 Ohio App.3d 169, 171. The trial court serves as the trier of fact in a suppression hearing and must weigh the evidence and judge the credibility of witnesses. State v. Fanning
(1982), 1 Ohio St.3d 19, 20. When reviewing a trial court's decision on a motion to suppress, an appellate court accepts the trial court's factual findings, relies upon the trial court's ability to assess the credibility of witnesses, and independently determines "without deference to the trial court, whether the court has applied the appropriate legal standard." State v.Anderson (1995), 100 Ohio App.3d 688, 691.
Stopping an automobile and detaining its occupants constitutes a seizure within the meaning of the Fourth Amendment to the United States Constitution. Delaware v. Prouse (1979),440 U.S. 648, 653, 99 S.Ct. 1391, 1396. However, the Fourth Amendment does not require a police officer lacking probable cause to arrest to "simply shrug his shoulders and allow a criminal to escape."State v. Freeman (1980), 64 Ohio St.2d 291, 295, certiorari denied (1981), 454 U.S. 822, 102 S.Ct. 107, 70 L.Ed.2d 94, quotingAdams v. Williams (1972), 407 U.S. 143, 145, 92 S.Ct. 1921, 1923. The essence of good police work often requires adopting an intermediate response. Id. "A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time." Id. at 296.
To justify a brief investigatory stop, the police officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry v. Ohio (1968),392 U.S. 1, 21, 88 S.Ct. 1868, 1880. The propriety of the investigatory stop must be viewed in light of the totality of the surrounding circumstances. State v. Bobo (1988), 37 Ohio St.3d 177, paragraph one of the syllabus, certiorari denied,488 U.S. 910, 109 S.Ct. 264, 102 L.Ed.2d 252; State v. Freeman (1980),64 Ohio St.2d 291, paragraph one of the syllabus. Whether the stop is unreasonable is tested by an objective standard: "Would the facts available to the officer at the moment of the seizure or the search `warrant a man of reasonable caution in the belief' that the action taken was appropriate?" Bobo, 37 Ohio St.3d at 180, quoting Terry, 392 U.S. at 21-22, 88 S.Ct. at 1880.
Applying the standard to this case, we find the actions of Officer Burgess were reasonable and appropriate under the circumstances. Officers Burgess and Rose arrived at 1100 Cook's Crossing to investigate a dispatch of a "verbal domestic" in the parking lot. The time of night was almost 2:30 a.m. The parking lot was vacant, except for appellee and her passengers. Appellee was just beginning to drive away from the area of the alleged dispute. The female passenger in the front seat was visibly "very distraught" and there was a male passenger in the back seat. Under the totality of these circumstances, Officer Burgess reasonably stopped appellee to investigate whether a criminal act had been or was being committed against appellee's distraught passenger. See Xenia v. Preston (Nov. 29, 1988) Greene App. No. 87-CA-102, unreported (holding that it was reasonable for an officer to stop a truck in an otherwise vacant apartment parking lot to investigate a dispatch involving a domestic violence fight). Although the acts that the officers observed may be consistent with innocent behavior, a series of acts, each of them perhaps innocent, may together give the police officer justification for conducting further investigation. United Statesv. Sokolow (1989), 490 U.S. 1, 9-10, 109 S.Ct.1581, 1586-87. We find the proposition we stated in State v. Eary (Sept. 5, 1989), Warren App. No. CA89-02-010, unreported, at 5, applicable in this case: "Indeed, he would have been derelict in his duty as a police officer if he had failed to stop and investigate the vehicle under the circumstances."
Accordingly, appellant's assignment of error is sustained, and the judgment of the trial court is reversed.
Judgment reversed and cause remanded.
POWELL, P.J., and WALSH, J., concur.
[1] It is not clear from the record exactly what "verbal domestic" means. At a minimum, the term seems to refer to a domestic dispute or argument.
[2] Officer Rose testified at the suppression hearing that two officers are usually dispatched "on domestic situations."